# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
## AT MEMPHIS
March 19, 2021 Session


## GWENDOLYN JUMPER v. KELLOGG COMPANY, ET AL.


**Appeal from the Court of Workers' Compensation Claims
No. 2017-08-1353, Amber E. Luttrell, Judge**

_____


**No. W2020-01274-SC-R3-WC – Mailed May 14, 2021; Filed June 23, 2021**

_____



Gwendolyn Jumper ("Employee") filed this action against Kellogg Company ("Employer"), seeking workers' compensation benefits for an injury to her back. Following a hearing, the Court of Workers' Compensation Claims denied Employee's claim for workers' compensation benefits. Employee has appealed. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm the judgment.


**Tenn. Code Ann. § 50-6-217(a)(2)(B) (Supp. 2020) Appeal as of Right;
Decision of the Court of Workers' Compensation Claims Affirmed**


ROBERT E. LEE DAVIES, SR. J., delivered the opinion of the court, in which CORNELIA A. CLARK, J., and DON. R. ASH, SR. J., joined.

Steve Taylor, Memphis, Tennessee, for the appellant, Gwendolyn Jumper

Cameron Watson, Memphis, Tennessee, for the appellees, Kellogg Company and Old Republic Insurance Company

# OPINION

## Factual and Procedural Background

Employee filed a Petition for Benefit Determination on April 27, 2018, stating that she hurt her back at work, and identifying a date of injury of December 16, 2016. The case proceeded to a compensation hearing before the Court of Workers' Compensation Claims on July 1, 2020.

### *Stipulations of the Parties*

Employee was 54 at the time of trial and has a high school education. The parties stipulated that Employee gave notice of a back injury to Employer on November 17, 2016. The parties also stipulated that Employee received authorized medical treatment from Dr. Stephen Waggoner, and those benefits were paid by Employer. The parties further stipulated that Employee had a prior injury to her back in 2003. Employee continues to work for Employer earning the same or greater wage as she was earning prior to the injury.

### *Trial Testimony of Employee*

Employee testified that she has worked for Employer for thirty years. She has had a number of manual jobs over the years involving bending, lifting, and twisting. She experienced problems with her lower back in November 2016 while working for Employer. Those problems were not related to a specific incident at work on a specific date, but rather the pain in her back gradually increased. Employee reported the pain to an Employer representative, telling him that the work was "killing" her back. The representative instructed Employee to visit the company nurse, and the nurse told Employee to write down the problem she was having with her back, and that she would send it to Employer's workers' compensation personnel. Employee provided a written statement on November 17, 2016, concerning her back injury stating: "From 2003-2014, I have worked on numerous jobs here at the Rossville plant. I worked in batter mix, which required lots of lifting. I have worked in the wheel room on MOD5, which I have done a lot of lifting and dumping bits. The stacker requires lifting – some lifting and dumping waffles. I worked in the packaging area, which required a lot of lifting of the cartons onto the machine." Employee stated that she put the years 2003-2014 in the statement because that was when she reported having problems with her back.

Employer provided Employee with a panel of physicians, and Employee selected Dr. Stephen Waggoner. Dr. Waggoner had Employee's records from two previous physicians—Dr. Hermann and Dr. Saenz—who had treated Employee for her back. Employee explained that in 2003 she was injured at work and was treated by Dr. Hermann. Employee hurt her back again in 2014 while lifting a barrel at work. She testified that she

reported that injury to Employer, but that Employer did not do anything about it. She then spoke with her family doctor who referred her to Dr. Saenz. Dr. Saenz prescribed physical therapy and medication. When Employee saw Dr. Waggoner after reporting pain in November 2016, he released her, and Employer denied her workers' compensation claim. Employee then began seeing Dr. Saenz again, who ordered an MRI, which showed "something was wrong" with her back. Dr. Saenz then referred Employee to Dr. Crosby who ultimately performed surgery in August 2017.

Employee testified that the pain she experienced in November 2016 was "way worse" than the pain she experienced in 2014. The surgery Dr. Crosby performed helped "a whole lot" and "relieved a lot of pain." Employee testified that she still has some pain in her low back and down her leg, but it is "[j]ust a little bit." Employee took five to six weeks off of work after the surgery, and is now back at work with Employer, working as a supervisor lead, which is much easier on her back.

On cross-examination, Employee testified that she told Dr. Waggoner she had been having trouble with her back for years. Employee further testified that she was told by Dr. Waggoner that her back injury was not causally related to her employment, and she did not take any steps to dispute that with Employer. All of Employee's treatment, with the exception of Dr. Waggoner, was paid for through Employee's private health insurance. Employee testified that she did not receive authorization from Employer to use any physician other than Dr. Waggoner, and did not discuss the need for additional treatment with Employer. After Employee had her surgery with her private insurance in August 2017, she received short-term disability benefits through Employer's policy, but does not think she told Employer that her surgery was work related. Employee stated that she referenced the 2003-2014 time frame in her note on November 17, 2016, because she had previous back problems during that time period. Employee said her back has gotten worse over the years, and she felt that work was causing it. Employee did not recall any particular incident at work that would have triggered the recurrence of her back pain, but rather the pain was gradually increasing. Employee testified that Dr. Saenz never told her that her back pain was work related.

On re-direct examination, Employee testified that she determined her back injury was work related in 2016, when she was told that by Dr. Crosby.

*Trial Testimony of Natasha Dickson*

Natasha Dickson, Employer's Human Resources Manager, testified at trial. Ms. Dickson testified that Employee reported an injury to Employer on December 7, 2017. Employer had previously provided Employee with a panel on November 17, 2016. Employee also notified Employer of an injury on July 6, 2016, in which Employee stated she may have reinjured her back in 2014, and can no longer handle the pain.

Ms. Dickson testified that Employee received short-term disability benefits in August-September 2017. Ms. Dickson further testified that if Employee had reported that she was taking leave for a work-related injury, she would not have received short term disability benefits because an employee cannot claim both short-term disability benefits and workers' compensation benefits. On cross-examination, Ms. Dickson stated that if an employee's workers' compensation claim has been denied, there is nothing improper about an employee applying for short-term disability benefits.

*Deposition Testimony of Dr. Glenn Crosby*

Dr. Glenn Crosby, a neurosurgeon, testified by deposition. He testified that he first saw Employee on May 25, 2017. Employee presented with a history of pain in her back and down her left leg with tingling aggravated by lifting and bending. Employee told him her pain was relieved somewhat by lying flat on her back with her legs elevated, and she had had some physical therapy. Employee told Dr. Crosby she had been experiencing pain in her back and leg, which she described as tingling without weakness.

Dr. Crosby testified that on physical examination, Employee had back and buttock pain with straight leg raising on the left, and no pain with straight leg raising on the right, with normal strength and reflexes. Dr. Crosby's impression at that time was that Employee had lumbar radiculopathy in the left leg. An MRI scan showed a ruptured disc at L4 to the left. Employee began developing weakness, and Dr. Crosby believed she had progressive nerve damage, which he believed was progressing fairly quickly. He offered her surgery, to be performed as a left L4 microdiscectomy. Employee agreed to the surgery, which Dr. Crosby performed on August 2, 2017. During the operation, Dr. Crosby found that there was a large ruptured disc with the fragment emerging underneath the nerve root, which he testified would explain Employee's left leg pain.

Employee had a post-operative appointment with Dr. Crosby's office on August 16, 2017, and the nurse's notes from that appointment indicate that Employee's leg pain had resolved but Employee still had some soreness in her back. Employee was given a note at that appointment releasing her to return to work on September 5, 2017, with a twenty-pound weight restriction. Employee's last appointment with Dr. Crosby was on November 27, 2017. At that appointment, Employee had some mechanical back pain but stated her leg pain was gone. Dr. Crosby testified that he would not expect Employee's leg pain to return, although it was possible.

Dr. Crosby testified that Employee's counsel wrote him a letter on November 30, 2017, which stated:
I represent Ms. Jumper in a potential workers' compensation claim.

- 4 -

I would like to ask you what is known in the law as a hypothetical question. In answering this question, I would like for you to assume the following facts are true[:]  that Ms. Jumper works in a factory which requires her to bend, twist, squat, stoop, push, and pull on a repetitive basis each work day, and further assuming no off-work trauma.

It is my understanding that you performed surgery on Ms. Jumper's low back on 8/2/17 and that Ms. Jumper has remained under care since that time.

My question, Doctor, is a simple one.  In your opinion to a reasonable degree of medical certainty, did Ms. Jumper's repetitive work activities of bending, twisting, squatting, stooping, pushing and pulling on a daily basis at work cause the disc rupture at L4 for which [you] performed the surgery on 8/2/17 assuming the facts set forth in the hypothetical are true and that there is no off work trauma?

Further, if Ms. Jumper's work activities did cause the disc rupture at L4 and made surgery under your care necessary, what percent did work activities contribute to the need for surgery?

Dr. Crosby responded to the letter on January 22, 2018, stating in part:

In response to your hypothetical question, and assuming the facts set forth in your hypothetical are true, and further assuming no off work trauma, in my opinion to a reasonable degree of medical certainty Ms. Jumper's repetitive work activities of bending, twisting, squatting, stooping, pushing and pulling on a daily basis caused the disc rupture at L4 for which I performed surgery on 08/02/2017.

In terms of a percentage, in my opinion to a reasonable degree of medical certainty, Ms. Jumper's work activities as set forth above are 75% to 80% of the cause of her lumbar surgery at L4 under my care.

On cross-examination, Dr. Crosby testified that he did not consider the causation of Employee's injuries until he received the letter from Employee's counsel, and his opinion was based on the representations in the letter from Employee's counsel.  Dr. Crosby testified that based on his own records, he did not attribute Employee's back pain to any particular incident, and there was nothing in his records addressing causation.  Dr. Crosby testified that he never spoke with Employee about the onset of her symptoms or cause of her injury, and she never told him that her injury might be work related.  Dr. Crosby testified that Employee did not speak with him about her job duties, he was unaware how

much weight Employee would have to lift at work, and he never reviewed a job description for Employee.

Dr. Crosby further testified that if Employee had any prior injuries or treatment to her back, that could affect his opinion on causation. Dr. Crosby also stated that he would need to review any prior records in order to assess causation, and that he had not reviewed any of Employee's medical records from other physicians, other than Dr. Apurva Dalal. He was unaware that Employee had seen Dr. Waggoner for a low back injury, and was unaware that Dr. Waggoner's records indicated that Employee had back pain on and off since a work injury in 2003. Dr. Crosby stated that that information would possibly have factored into his causation opinion. Dr. Crosby also was unaware that Employee had been treated by Dr. Saenz for low back pain in early 2015 through March 2017, and he had not reviewed Dr. Saenz's records. Dr. Crosby testified that the previous treatment with Dr. Saenz would have been helpful in determining causation. In addition, at the time Dr. Crosby ordered Employee's MRI, he was unaware that she had had an MRI three months earlier. Dr. Crosby also testified that he billed Employee's private insurance for her treatment, which he explained would have been improper if he had believed it was a work-related injury.

Dr. Crosby further testified that he had reviewed an evaluation report prepared by Dr. Apurva Dalal, discussed below, and agreed with Dr. Dalal's impairment rating of 12% to the body as a whole. Dr. Crosby was asked about Dr. Dalal's finding of bilateral radiculopathy, and Dr. Crosby said it would be possible for Employee to have some ongoing symptoms after surgery, but that when he last saw her she was much better. Dr. Crosby also testified that Employee never complained to him of radiculopathy in the right leg.

*Deposition Testimony of Dr. Apurva Dalal*

Dr. Dalal is an orthopedic surgeon who testified by deposition. At the request of Employee's counsel, Dr. Dalal performed an independent medical examination of Employee on February 14, 2017. Dr. Dalal testified that Employee informed him that her injury occurred sometime in late December 2016. Employee told Dr. Dalal that she was a machine operator and her job required her to carry buckets weighing 35 to 40 pounds, and that she had done this for several years. Employee also told Dr. Dalal that she started having severe back pain in late 2016, and was seen by Dr. Waggoner, Dr. Saenz, and Dr. Crosby, and that an MRI showed a herniated disc, which was surgically repaired. Dr. Dalal stated that he reviewed the medical records from Dr. Crosby, Dr. Waggoner, and Dr. Saenz.

Dr. Dalal testified that Employee told him that she cannot lie on her left side, has severe bilateral leg pain, has tingling and numbness, and is unable to sleep. On physical examination, Dr. Dalal stated that he found severe paraspinal spasms, severe tenderness in

the lower lumbar spine, a positive bilateral straight leg test, altered sensation in the L5 distribution on the left side, and decreased motor power in the L5 distribution. He stated that Employee's hips and reflexes were normal. Dr. Dalal testified that Employee walks with a severe limp and has not completely recovered. His diagnosis was post work-related injury to the lower spine requiring surgery with continued radiculopathy. Dr. Dalal testified that he determined that Employee had radiculopathy by doing a straight leg raising test, and from the presence of altered sensation.

Dr. Dalal reviewed the causation inquiry letter that Employee's counsel sent to Dr. Crosby on November 30, 2017, as well as Dr. Crosby's response on January 22, 2018. Dr. Dalal testified that he agreed with Dr. Crosby, except that he would say that Employee's work was 90% the cause of her need for lumbar surgery. Dr. Dalal said the other 10% of the cause of Employee's need for surgery was her degenerative conditions of the spine. Dr. Dalal assigned Employee a 12% impairment to the body as a whole.

On cross-examination, Dr. Dalal testified that Employee gave him a history of no previous injury, and only provided an injury date of December 2016. Dr. Dalal stated that Employee did not claim to suffer an acute injury, but instead asserted that she developed the injury over time. Dr. Dalal testified that he did not recall having any discussion with Employee regarding her having ongoing low back pain dating back many years.

*Deposition Testimony of Dr. Stephen Waggoner*

Dr. Waggoner is an orthopedic surgeon who testified by deposition, and stated that any opinion he gave would be to a reasonable degree of medical certainty. Dr. Waggoner testified that after Employee selected him from the panel of physicians, he examined Employee on December 7, 2016. He reviewed Employee's medical records from 2003 and 2004, including x-rays and an MRI of Employee's lumbar spine. He stated that Employee recovered from those injuries and then had another injury in 2015, and that he reviewed records related to that injury as well.

Dr. Waggoner testified that Employee complained to him of lower back pain, which she told him had troubled her on and off since 2003. Employee complained of pain especially when bending and lifting heavy objects. Dr. Waggoner stated that Employee told him that her pain got worse in 2014 after lifting a heavy bucket at work, and she had trouble with her back ever since that 2014 injury.

Dr. Waggoner stated that his physical examination focused on the lumbar spine. Employee had tenderness, a normal range of motion in her spine, and normal strength in her lower extremities. A neurologic examination showed normal strength, normal reflexes,

and normal sensation. The x-rays from 2015 showed mild scoliosis and facet arthrosis, but no other abnormalities.

Dr. Waggoner concluded that Employee had chronic lower back pain and underlying lumbar spondylosis or degenerative changes, as well as mild scoliosis with no evidence of radiculopathy. Dr. Waggoner opined that Employee could return to work at full duty without any restrictions.

Dr. Waggoner did not think that Employee's symptoms were related to her 2003 injury. His opinion that Employee experienced a lumbar strain in 2003 was supported by normal x-rays and MRI taken at that time. Employee then was released to maximum medical improvement in 2004, doing well with no further treatment until 2015. Although Employee told Dr. Waggoner that she was injured in 2014, there was no record of such an injury at her employment to support that claim. Dr. Waggoner testified that Employee did not provide him with any information about any recent injuries or series of incidents at work subsequent to the injury in 2014, nor did she tell him that her back injuries were all related to her work at Employer. Dr. Waggoner indicated that without a definite history of a recent injury, Employee did not have a work-related injury. Instead, Dr. Waggoner concluded that Employee's pain was likely related to the mild degenerative changes that she had in her lumbar spine.

## Action of the Trial Court

The trial court entered an order denying Employee's claim for workers' compensation benefits. The trial court found that Employee did not establish a gradually occurring injury because she did not prove her injury was caused by a specific set of incidents, identifiable by time and place of occurrence. The trial court further found that even if Employee had established an injury, she did not establish medical causation by a preponderance of the evidence. The trial court also rejected Employee's arguments that the statutory presumptions in favor of the opinions of an authorized treating physician are invalid.

## Standard of Review

Findings of facts are reviewed de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(a)(2) (2014 & Supp. 2020). When the trial court has had the opportunity to hear in-court testimony and observe the witness's demeanor, considerable deference must be afforded the trial court's factual determinations. *Kilburn v. Granite State Ins. Co.*, 522 S.W.3d 384, 389 (Tenn. 2017) (citing *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009)). When the issues involve expert medical testimony contained in the record by deposition, the

- 8 -

reviewing court may draw its own conclusions as to those issues because the weight and credibility of the witness must be drawn from the contents of the depositions. *Id.* (citing *Foreman v. Automatic Sys., Inc.*, 272 S.W.3d 560, 571 (Tenn. 2008)). Conclusions of law are reviewed de novo with no presumption of correctness. *Id.* (citing *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009)).

When presented with conflicting expert opinions, a trial court has discretion to determine which testimony to accept. *See Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. Workers' Comp. Panel 1996); *Johnson v. Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). In doing so, the trial court may consider, among other things, the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical result, or bases its decision on a clearly erroneous assessment of the evidence. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010).

**Analysis**

Employee raises three issues on appeal. First, Employee asserts that the statutory presumptions set forth in Tennessee Code Annotated section 50-6-102(14)(E) (2014 & Supp. 2020) and Tennessee Code Annotated section 50-6-204(k)(7) (2014 & Supp. 2020) regarding the opinions of an authorized treating physician with respect to causation and degree of permanent impairment violate Tennessee Code Annotated section 50-6-116 (2014) and are invalid.[1] Next, Employee asserts that the trial court erred in ruling that Employee's testimony did not provide facts sufficient to support the hypothetical question posed to Employee's experts. Finally, Employee argues that her work activities aggravated or accelerated her pre-existing condition to the point that surgery was warranted under the law.

*Validity of Statutory Presumptions in Favor of the Authorized Treating Physician*

---

[1] In Employee's statement of issues, she cites to Tennessee Code Annotated section 50-6-102(c), and in her argument also references Tennessee Code Annotated section 50-6-102(e). These appear to be typographical errors, as the presumption regarding causation is found at Tennessee Code Annotated section 50-6-102(14)(E). Employee also challenges the presumption regarding the permanent impairment rating found at Tennessee Code Annotated section 50-6-204(k)(7), although she did not cite to that provision in her statement of issues.

Employee challenges the validity of Tennessee Code Annotated section 50-6-102(14)(E), which provides that the opinion of the authorized treating physician shall be presumed correct on the issue of causation, but that this presumption shall be rebuttable by a preponderance of the evidence. Similarly, Employee challenges Tennessee Code Annotated section 50-6-204(k)(7), which provides that a treating physician's written opinion of the injured employee's permanent impairment shall be presumed correct, but shall be rebuttable by a preponderance of the evidence. Employee argues that these provisions conflict with Tennessee Code Annotated section 50-6-116, which provides that the workers' compensation law shall be construed fairly and impartially, and not in a manner favoring either employee or employer.

Like the trial court, we find these arguments to be meritless. The language of a statute "should be construed, if practicable, so that its component parts are consistent and reasonable," and "[a]ny interpretation of the statute that would render one section of the act repugnant to another should be avoided." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) (internal quotations and citations omitted). While the authorized treating physician in the case before us did not believe Employee's injury was work related, the statutory presumptions in Tennessee Code Annotated section 50-6-102(14)(E) and Tennessee Code Annotated section 50-6-204(k)(7) are facially neutral, do not favor the employee or employer, and are entirely consistent with Tennessee Code Annotated section 50-6-116.

*Whether Employee Established a Compensable Injury*[2]

The statutory standards applicable to injuries occurring on and after July 1, 2014, provide in pertinent part:

> "Injury" and "personal injury" mean an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including hearing loss, carpal tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that;
>
> (A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment, unless it can be shown to a reasonable degree of medical certainty

---

[2] In determining whether Employee has established a compensable injury, we address Employee's second and third issues together.

- 10 -

that the aggravation arose primarily out of and in the course and scope of employment;

(B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility[.]

Tenn. Code Ann. § 50-6-102(14) (Supp. 2020). These statutory standards replaced previous ones that permitted a trial court to "award benefits based upon medical testimony that the employment 'could or might have been the cause' of the employee's injury when there is also lay testimony supporting a reasonable inference of causation." *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274–275 (Tenn. 2009) (quoting *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005)). The current workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction . . . [without] favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2014) (applicable to injuries occurring on and after July 1, 2014). Employee bears the burden of proving each and every element of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2014 & Supp. 2019).

Here, Dr. Waggoner was the authorized treating physician, and his opinion that Employee's back pain was caused by her degenerative changes, and was not work related, is entitled to a presumption of correctness. In an attempt to overcome this rebuttable presumption, Employee's counsel sent a letter to Dr. Crosby asking him to opine on causation, assuming "repetitive work activities of bending, twisting, squatting, stooping, pushing and pulling on a daily basis" as well as "no off work trauma." However, as the trial court pointed out, the assumptions that Dr. Crosby was asked to make are not fully supported by the record. Employee did testify that her work activities involved "lifting, dumping, bending, and twisting." However, there was no testimony that her work activities involved "squatting, stooping, pushing, and pulling." In addition, Employee did not present specific evidence regarding the nature or frequency of her physical work activities. There also was insufficient testimony regarding Employee's activities outside of work, and the absence of any off-work trauma. Moreover, Dr. Crosby testified that before he received the letter from Employee's counsel, he did not attribute Employee's need for surgery to her employment. He also had not reviewed any of Employee's medical records from other

physicians, other than Dr. Dalal, which he said could have impacted his opinion on causation.  Dr. Dalal testified that he agreed with Dr. Crosby's opinion on causation, but his opinion suffers from the same deficiencies.

As the Tennessee Supreme Court has previously explained, "it is axiomatic that hypothetical questions are improper and of no value when they assume facts not supported by the evidence at trial." *Bearden v. Memphis Dinettes, Inc.*, 690 S.W.2d 862, 868 (Tenn. 1984); *see also Cortrim Mfg. Co. v. Smith*, 570 S.W.2d 854, 856 (Tenn. 1978) ("Of course, it is not proper for a hypothetical question to assume facts that are not supported by evidence at the trial.").  Here, the opinion of Dr. Crosby was based on a hypothetical proposed by Employee's counsel that was not fully supported by evidence at trial.  Thus, Dr. Crosby's opinion was insufficient to overcome the presumption of correctness given to the opinion of Dr. Waggoner that the injury was not work related.  Employee simply did not present sufficient evidence to establish a work-related injury.

## Conclusion

For the foregoing reasons, the judgment of the Court of Workers' Compensation Claims is affirmed.  Costs on appeal are taxed against Plaintiff-Appellant Gwendolyn Jumper and her surety, for which execution may issue if necessary.


_____
ROBERT E. LEE DAVIES, SR. J.

- 12 -

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT JACKSON

**GWENDOLYN JUMPER v. KELLOGG COMPANY ET AL.**

**Court of Workers' Compensation Claims**
**No. 2017-08-1353**

_____

**No. W2020-01274-SC-R3-WC – Filed June 23, 2021**
_____

**JUDGMENT ORDER**

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs are assessed to Plaintiff-Appellant Gwendolyn Jumper, for which execution may issue if necessary.

It is so ORDERED.


PER CURIAM